# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01385-COA

**JIMMY JOE DAVIS A/K/A JIMMY DAVIS**          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/2024 |
| TRIAL JUDGE: | HON. RANDI PERESICH MUELLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | WILLIAM CROSBY PARKER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/02/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    Jimmy Joe Davis appeals his convictions in the Harrison County Circuit Court of one count of sexual battery and one count of touching a child for lustful purposes. He was sentenced to serve life in prison for sexual battery and a concurrent term of fifteen years in the custody of the Mississippi Department of Corrections (MDOC) for touching a child for lustful purposes.

¶2.    On appeal, Davis argues (1) that the trial court erred by giving a jury instruction on the uncorroborated testimony of a sex-crime victim, and (2) that his verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.

## FACTS

¶3. In early 2021, Davis lived in a trailer in Pass Christian, Mississippi, with his girlfriend, Melissa W., Melissa's son, T.B., and her daughter, K.B.[1] At the time, Davis was fifty-one years old, and K.B. was seven years old.[2]

¶4. On March 23, 2021, CPS social worker Shanique Harrison performed a routine visit to Melissa's home. During the visit, K.B. told Harrison that she and Davis had a "big secret." K.B. eventually revealed to Harrison that for the past two months, Davis had sexually abused her. Harrison reported the abuse to the Harrison County Sheriff's Department and scheduled a forensic interview for K.B. at the Child Advocacy Center (CAC). Daniel Dooley at the CAC conducted K.B.'s forensic interview. During the interview, K.B. disclosed to Dooley that Davis had made her touch his penis.

¶5. A Harrison County grand jury indicted Davis on two counts of touching a child for lustful purposes and one count of sexual battery.

¶6. A jury trial was held in May 2024. K.B., then ten years old, testified that when she was seven years old, Davis began sexually abusing her. K.B. testified that the abuse occurred in approximately February and March of 2021, and she described several of the occurrences. K.B. testified that during the relevant time frame, Davis entered her bedroom, pulled his pants down, and instructed K.B. to put his penis in her mouth. Davis then put his penis in her mouth and moved his penis in circles inside her mouth. K.B. testified that Davis said

---

[1] We use initials for the child and her brother to protect the child's identity.

[2] K.B. was born in 2014.

"it's coming" and then ejaculated into her mouth. K.B. also testified that more than once, Davis instructed K.B. to "rub his penis," and he showed her how to rub it.

¶7. K.B. testified that on another occasion, Davis brought sour cream into her bedroom and put it on his penis. K.B. stated that she had a small refrigerator in the closet of her bedroom where she kept sour cream, describing it as one of her favorite foods.

¶8. K.B. further testified that Davis also touched her vagina with his hand and his mouth. K.B. described that Davis rubbed her vagina "in circles" over her clothing. K.B. also testified about a time that Davis entered her bedroom, pulled down her pants, and licked her "front butt." K.B. testified that her "front butt" was her vagina. Another time, K.B. was wearing her swimsuit, and Davis put his hands inside her swimsuit and "rubb[ed] [sunscreen] on my [vagina] and my back butt[.]" K.B. testified she asked Davis to stop, but he did not.

¶9. According to K.B., Davis told her that the abuse was "our secret," and he threatened that if she disclosed the abuse, Davis would kick K.B. out of the house. K.B. testified that she did not tell her mother about the abuse. K.B. explained that she had previously been removed from her mother's custody, and she was scared that it would happen again.

¶10. When asked, K.B. was unable to identify Davis in the courtroom. However, K.B. testified that she had not seen Davis since 2021, more than three years prior to the trial.

¶11. K.B.'s mother, Melissa, testified that K.B. never disclosed the abuse to her. Melissa first learned of the abuse allegations from Harrison. Melissa admitted that while Davis lived with her in the trailer, he and K.B. were occasionally home alone together, and Davis would sometimes take K.B. with him to run errands or to the beach. Melissa identified Davis at

3

trial, but she testified that he did not look the same as he did when she dated him, explaining that "[h]is hair is not the same color and his beard is different."

¶12. Regarding K.B.'s allegations, Melissa testified that K.B. did not have a refrigerator in her bedroom and that K.B. did not keep sour cream in her room. The transcript also reflects that during a search of Melissa's house in connection with K.B.'s abuse allegations, law enforcement did not find a refrigerator in K.B.'s room.

¶13. Harrison testified that during her home visit to Melissa's home, K.B. told Harrison that she had a "big secret" with Davis and that K.B. had promised him that she would not tell anyone. K.B. hinted to Harrison that the secret was about "something that kids aren't supposed to do." Upon further inquiry from Harrison, K.B. disclosed that Davis "puts his willie in [K.B.'s] mouth and that he licks the front and the back of her private area." Harrison also testified that K.B. told her that she watched sexual videos on YouTube with Davis. Harrison reported the abuse to the Harrison County Sheriff's Department and also scheduled a forensic interview for K.B. at the Child Advocacy Center in Gulfport.

¶14. Dooley conducted a forensic interview with K.B. approximately three weeks after her initial disclosure to Harrison. Dooley testified that during the interview, K.B. disclosed that Davis made her rub his penis and put sour cream on it. Dooley testified that K.B. did not disclose any allegations of oral sex. However, K.B. had testified that she did not disclose as much information about the abuse to Dooley because she did not know Dooley or trust him. K.B. explained that she felt more comfortable talking to Harrison.

¶15. At the close of the State's case-in-chief, Davis moved for a directed verdict, which

4

was denied. The jury ultimately found Davis guilty of one count of touching a child for lustful purposes and one count of sexual battery. The trial court sentenced Davis to life in prison for sexual battery and a concurrent term of fifteen years in the custody of the MDOC for touching a child for lustful purposes, with both sentences to be served day for day.

¶16. After the denial of his post-trial motion for an acquittal or new trial, Davis appealed.

## DISCUSSION

### I. Jury Instruction

¶17. Davis first argues that the trial court abused its discretion in giving Jury Instruction S-7. Davis asserts that Instruction S-7 impermissibly commented on the weight of the evidence, was argumentative, deprived Davis of a fair and objective consideration of the evidence by the jury, and improperly defined reasonable doubt.

¶18. We review the giving or refusal of jury instructions for an abuse of discretion. *Pitts v. State*, 291 So. 3d 751, 755 (¶17) (Miss. 2020). "If the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Id*.

¶19. Instruction S-7 provided as follows: "The [c]ourt instructs the [j]ury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact." Davis objected to Instruction S-7 in favor of Instruction D-9, which provided: "The [c]ourt instructs the jury that the uncorroborated testimony of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." After hearing arguments from counsel, the trial court refused Instruction D-9 and gave Instruction S-7.

5

¶20. The Mississippi Supreme Court has held that the exact language used in Instruction S-7 is an accurate statement of the law. *Pitts*, 291 So. 3d at 757-58 (¶¶30-34) (holding the jury instruction "that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact" is "an accurate statement of the law"). Additionally, the supreme court and this Court have rejected the argument that this language is an improper comment on the evidence. *Pitts*, 291 So. 3d at 757-58 (¶¶32-36); *Bliss v. State*, 326 So. 3d 1000, 1005 (¶¶17, 21) (Miss. Ct. App. 2021) (approving instruction to the jury that "the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact" as an accurate statement of the law and not an improper comment on the weight of the evidence). Instruction S-7 did not tell the jury how to weigh the credibility of the victim's testimony, instructing only that "if [the testimony is] accepted as true by the finder of fact," the jury may "accept or reject it." *Pitts*, 291 So. 3d at 758 (¶36).

¶21. Moreover, after reviewing the jury instructions as a whole, we find that the trial court in this case instructed the jury "not to single out one instruction alone as stating the law but to consider these instructions as a whole" and that as the "sole judge of the facts in this case," the jury held "exclusive province to determine what weight and what credibility to assign the testimony and supporting evidence of each witness in this case." *Bliss*, 326 So. 3d at 1005 (¶20); *see also Pitts*, 291 So. 3d at 758 (¶37). The trial court also instructed the jury "not to single out any certain witness or individual point or instruction and ignore the others." *Bliss*, 326 So. 3d at 1005 (¶20). Further, the trial court informed the jury of the elements required

for sexual battery and touching a child for lustful purposes and the State's burden to prove every element beyond a reasonable doubt. *Id.* We accordingly find that "when read as a whole, . . . the jury instructions given here 'fairly announced the law of the case and created no injustice.'" *Id.* at (¶21) (quoting *Pitts*, 291 So. 3d at 757 (¶33)).

¶22. After reviewing relevant caselaw and the jury instructions as a whole, we find that the trial court did not abuse its discretion in giving Instruction S-7.

## II. Weight of the Evidence

¶23. Davis next argues that the jury's verdict was against the overwhelming weight of the evidence. Davis asserts that the alleged inconsistencies in K.B.'s testimony undermined the credibility of her testimony. He also argues that K.B.'s claims of sexual abuse were not corroborated by any forensic evidence.

¶24. When reviewing challenges to the weight of the evidence, this Court views the evidence "in the light most favorable to the verdict[.]" *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). This Court may disturb a verdict on this ground only "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* We further recognize our supreme court's precedent that "[w]hen evidence or testimony conflicts, the jury is the sole judge of witness credibility and the weight and worth of their testimony." *Bernard v. State*, 288 So. 3d 301, 306 (¶19) (Miss. 2019).

¶25. As stated, K.B. testified about several occurrences of sexual abuse by Davis. K.B. testified that Davis touched her vagina with his hand and his mouth and that he pulled her

7

pants down and licked her vagina. K.B. testified that another time, Davis instructed her to put his penis in her mouth, and he then moved his penis in circles inside her mouth. K.B. also testified that Davis made her rub his penis with her hand.

¶26. The testimony at trial also shows that despite some inconsistencies, K.B. made statements to Harrison and Dooley that were consistent with sexual abuse. Harrison testified that K.B. disclosed to her that Davis put his penis in K.B.'s mouth and licked the front and back of her privates. Dooley testified that K.B. disclosed to him that Davis made K.B. rub his penis, but she did not disclose any allegations of oral sex. However, K.B. testified at trial that she did not disclose as much information about the abuse to Dooley because she did not know Dooley or trust him.

¶27. After weighing the evidence, resolving conflicts, and assessing witness credibility, the jury returned a verdict finding Davis guilty of one count of touching a child for lustful purposes and one count of sexual battery. Viewing the evidence in the light most favorable to the verdict, as we must, we find that the jury's verdict was not "so contrary to the overwhelming weight of the evidence that to allow [the verdict] to stand would sanction an unconscionable injustice." *Little*, 233 So. 3d at 289 (¶1). Accordingly, we affirm Davis's convictions and sentences.

## CONCLUSION

¶28. For the foregoing reasons, we affirm Davis's convictions and sentences.

¶29. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

8